case number 24-3029 United States of America v. Ngozi Pole appellants Ms. Stern for the appellant, Mr. Sinha for the appellee. Good morning, counsel. Ms. Stern, please proceed when you're ready. Thank you, your honor. Good morning, and may it please the court. Ilana Stern on behalf of the appellant Ngozi Pole. The court should reverse the district court's denial of Mr. Pole's motion for a new trial on the basis of ineffective assistance of counsel. Because the government effectively concedes constitutionally deficient performance by counsel in this case, I would like to focus my comments today on the prejudice prong of the Strickland analysis. Specifically, I would like to address two issues. First, trial counsel's failure to object to Mr. Mulcanigy's testimony that was admitted in violation of Federal Rule of Evidence 408. And second, trial counsel's failure to object to the government's use of Mr. Pole's oath of office in its closing arguments. Both of these errors went to the critical issue in this case, Mr. Pole's state of mind. Mr. Mulcanigy's testimony went directly to this critical question. And trial counsel's failure to object was prejudicial for two reasons. First, under this court's opinion in Davis, this testimony is precluded. Under Davis, Federal Rule 408 violative testimony admitted in error is grounds for vacater and remand. In Davis, strikingly similar, though arguably less damaging testimony regarding an offer to repay a contested sum was admitted over objection. And there, the government, as in Mr. Pole's case, used that evidence to prove the defendant's guilt, which this court determined was prohibited under Federal Rule of Evidence 408. Where it wasn't sufficiently clear whether Rule 408 testimony may have affected the outcome, this court vacated and remanded. And we submit that the same result should obtain in this case. Here, Mr. Mulcanigy's testimony was arguably more damaging than the testimony admitted in error in Davis because Mr. Mulcanigy was permitted to testify not only about the fact that Mr. Pole had offered to repay this amount of money to, quote, get this all behind him. But further, Mr. Mulcanigy was permitted to testify about the effect that this offer had on him. He was permitted to testify that this was the last straw in his mind as to whether Mr. Pole had taken this money. And he further testified that he couldn't imagine that someone who had an honest right to that money would offer to repay it. That didn't make sense. For prejudice purposes, which you're hopefully going to address, we have to take into account that evidence in light of all the evidence, right? That's correct, Your Honor. And what you're focused on now is the damaging capacity of this particular statement on its own. But in relation to all the evidence that's submitted on the relevant elements, you would have to show that there's a reasonable probability that the result would have been different. Absolutely, Your Honor. And we believe that this erroneously admitted testimony rises to that level really for a few reasons. So first, Mr. Mulcanigy testified as the government's lead and star witness. So this is on the first day of Mr. Pole's trial. And all of the evidence that came in thereafter was really in the shadow of this damaging testimony about conclusive evidence of Mr. Pole's guilt. And then the government reminded the jury in its closing arguments about this meeting that occurred between Mr. Mulcanigy and Mr. Pole, where Mr. Craig was also present, and reminded the jury that this meeting was the moment that Mr. Pole was caught. So this was critical evidence in the government's case. And it went not only to Mr. Pole's offer to repay this money, but to his consciousness of guilt, which was the critical question before the jury. Did he have the requisite state of mind? Did the closing argument specifically talk about the offer to repay? It did not specifically recite or re-recite that evidence, Your Honor, but it did refer back in at least three places to that critical meeting in January 2007, about which Mr. Mulcanigy was testifying when this testimony came in without objection. And the government at pages 1937, 1946, and 1947 of the record refer back to that as the moment that Mr. Pole was caught. So the government obviously placed great weight on this testimony and on Mr. Mulcanigy as a witness. He was critical to the government's case. He was the last chief of staff for whom Mr. Pole worked when he served in Senator Kennedy's office. Saying that it's the moment that he was caught is a lot different than saying it was the moment that he confessed guilt, right? I understand the distinction, Your Honor, but I would submit that it was the substance of Mr. Mulcanigy's testimony that this was the moment that Mr. Pole effectively confessed his guilt, was conscious of his guilt. And under Davis, we know that such testimony is plainly inadmissible where it goes to the defendant's consciousness of guilt. Well, the way that they knew that he was caught was when he confirmed that he actually did what they suspected him of doing, not him saying, I'll repay you. I mean, that wasn't dispositive as to whether he was caught or not. It was him agreeing that, yes, he had made these transactions and he made them without authority. Well, I would challenge a bit, Your Honor, the characterization that Mr. Pole made them without authority. Because the question before the jury was whether Mr. Pole had a reasonable belief that he would have been able to issue these spend-down bonuses to get Senator Kennedy's office budget as close to zero as possible every fiscal year, which he understood to be his mandate. And there was conflicting testimony about that January 2007 meeting and about what exactly Mr. Pole may have said about the reasons for this money. So by way of example, Mr. Craig also testified at Mr. Pole's trial. And when questioned, Mr. Craig explained that one of the reasons that Mr. Pole had given was that he was reimbursing himself for expenses and that he had issued these bonuses in order to spend down the budget, which he understood was his mandate as Senator Kennedy's office manager. He understood that was Senator Kennedy's wish. And he had limited oversight and limited guidance in how to do that during his tenure as Senator Kennedy's office manager. And Mr. Craig also offered some testimony that conflicted with Mr. Mulganicki's version of events when Mr. Craig explained that Mr. Pole had not, in fact, actually said that he had given these bonuses or made these transactions in order to compensate himself in a way that he felt he would have made more, for example, in the private sector. And that was consistent with Mr. Pole's testimony when he testified at trial, when he also said, you know, I never, I never said that. I said, absolutely not. Could I have made more in the private sector? I understand that the evidence wasn't all, I guess, I understand that there were, you know, there was conflicting evidence and one could argue different inferences from the evidence. My point is that you are saying that when the government, in closing argument, emphasized this meeting and described it as the meeting is the time when he was caught. It was a meeting that they just, they essentially characterized it as really like an intervention in where they confronted him with what had been done and tried to get his explanation for what had been done and ultimately concluded that that wasn't a satisfactory explanation. All in their mouth. So, all of that, none of that necessarily has anything to do with whether he agreed to repay the money. I, again, I understand the distinction, Your Honor, but I would submit that the whole of Mr. Mulganicki's testimony was in the shadow of this first early testimony that happened on the first day of trial about this offer to repay, which he said was conclusive evidence of Mr. And, yes, a lot happened in that meeting and there was confronting Mr. Pohl about the spend down bonuses and where this money had gone. But ultimately, the critical moment was when Mr. Pohl offered to repay to, quote, get this all behind him. And Mr. Mulganicki said, well, that was that was the last straw. That was the moment that he became convinced that there there was no good explanation for this and that he couldn't imagine that someone who had an honest right to the money would make such an offer. And critically, under Davis, such testimony is plainly inadmissible. And trial counsel's failure to object to that testimony was was constitutionally ineffective assistance. And it was prejudicial because we don't know whether it's such inadmissible evidence entered into the jury's consideration here. What we do know is that there was substantial conflicting evidence in this case. The district court explicitly said as much at Mr. Pohl's sentencing. The district court said there was conflicting evidence, conflicting testimony presented every day of the trial. There was scarcely a fact that was not in dispute. This is at page twenty three, eighty six and eighty seven of the record. Mr. Pohl's sentencing transcript. So there was a lot for the jury to weigh. It was up for the jury to consider, to consider credibility of witnesses, to weigh conflicting evidence and come to a verdict. And we also know in this case that the jury struggled to do that. We have juror notes that say, you know, we're having trouble reaching a unanimous verdict. Can we come back unanimous on certain counts and not on others? And so in light of this record, we would submit that it's not entirely clear that the jury, in fact, convicted Mr. Pohl based on evidence that was validly and properly before it. And for the reasons explained in our briefs and for the reasons discussed today, I realize that I'm out of time. We respectfully request that the court reverse the district court's denial of Mr. Pohl's motion for a new trial on the basis of ineffective assistance of counsel. Can you direct us to any case where one evidentiary error has been sufficient to find prejudice under the district? I'm not aware of a case where one evidentiary. Davis, I submit, was a distinguishable case because there was an objection there. Counsel did try to keep out this Rule 408 violative testimony. And so that was a harmless error analysis that the court performed. It was not a strickland prejudice analysis. I am aware of cases and we cite them in our briefs where there were similar prosecutorial misstatements in closing arguments, which also occurred here regarding Mr. Pohl's oath of office and other evidentiary issues that did amount to prejudice and and and where a remand was was was the outcome. Thank you, Mr. We'll give you a little time for rebuttal. Thank you, Your Honor. Mr.  Good morning, Your Honors. May it please the court. Javier Sinha on behalf of the United States. Pohl's claims of ineffective assistance of counsel here lack merit because Pohl cannot carry his burden of showing there's actual prejudice to him in this case. Pohl's own words and actions show this. Pohl himself admitted in multiple email communications that he needed. What he was giving was bonus proposals or suggestions or recommendations. In a memo to Mogleniki, Pohl said that my role in this office is to give recommendations for bonuses, which the chief of staff must then approve. Pohl must have known he didn't have authorization for these bonuses. He gave them to himself for amounts much larger than were ever approved and often before any approval discussions were even held. And Pohl repeatedly lied to chiefs of staff about these bonuses. He provided them spreadsheets that gave fake numbers that did not reflect the much higher bonuses he actually gave himself. He told Mogleniki at one point that he had received between around $2,000 and $5,000 in bonuses last year when he had, in fact, received two $13,000 bonuses. And during the January meeting, he gave these shifting and conflicting excuses for why he had given himself these bonuses. My friend on the other side has mentioned Davis multiple times. Davis did not discuss harmlessness. The government didn't raise harmlessness in that case, so it doesn't speak to the prejudice question in this case. And my friend on the other side also mentioned multiple times that it's not clear if the jury considered this. It's not – she didn't know if the jury had thought this was important or not. To the extent that this is her burden to show prejudice, that just means Pohl hasn't carried his burden here. And indeed, Pohl testified at trial, and the jury was free to disbelieve him and consider that evidence as substantive evidence of his guilt. Was he confronted with the statement that he offered to repay the trust indemnation? Or was that – did it come up at all? It did not, Your Honor. I apologize. It did not, Your Honor. This was mentioned on the first day of trial briefly and was never mentioned again. My friend on the other side has mentioned this was brought up during closing argument, as Your Honor noted. The government brought up the January meeting to discuss Pohl's shifting and conflicting answers for why he had given himself this money, but it never mentioned his offer to repay. And indeed, this similar argument was raised in a district court, and district court found it misleading for this very reason. This testimony here wasn't a linchpin of this case. What this case was really about was Pohl's own statements of action, saying, I don't have authorization to do this without chief of staff approval, himself giving himself these bonuses at a time when he could never have had approval for them, and then, of course, lying repeatedly to cover up his scheme. What do you think the government was referring to in closing argument when they drew the jury's attention back to the initial meeting? The government was discussing Pohl's – his excuses for why he gave himself this money. The first was that he was reimbursing himself, and the second was that he was trying to spread the money around to get to zero. So the government said this was – you know, Pohl said these things. They don't actually make sense if you look at the record here. They don't make sense when you look at Pohl's repeated lies. But the government never mentioned the offer to repay again. But what – why wouldn't the jury have concluded the same thing that Mr. Mogelnicki concluded, which is that if he offered to pay the money back, then obviously he knew he was not entitled to the money. So why wouldn't – why wouldn't the jury have reached that conclusion after hearing that testimony? That was Mogelnicki's opinion, but the jury, of course, was free to determine the significance of the offer to repay for themselves. Trial counsel here believe that this actually painted Pohl in a positive light because it showed Pohl acting in the best interest of the office on the district court. And its order recognized that the jury here could have seen this as a positive thing, as Pohl's saying. This is my money, but I want to work well with the office, so I'm happy to pay it back. Again, this is Pohl's burden to show. But the government didn't make that. I mean, it's not – if that were really apparent, then you would think that the government would have set a closing argument, that they would have used that fact as something in their favor. And they obviously didn't, for understandable reasons, the government would have done that, right? This was something that trial counsel believed, which is why trial counsel didn't feel a need to object to it. It's not clear the jury would have seen this as Pohl obviously admitting his guilt. Indeed, it wasn't very important at all to Pohl's guilt in this trial. As I mentioned, we didn't mention it ever again. What really was showing Pohl's guilt here was the things he said and the things he did that showed he knew he didn't have authorization, but he still gave himself the money anyway and hid it from the chiefs of staff for years. Let me ask you about the restitution. I don't understand the government's position attempting to distinguish Huey and Hugo. They seem directly contrary to the award of restitution covering dates that were not in any indictment that the jury charged, and the jury was not told to look for a scheme. They were given specific dates, and that was all they found guilt on, those specific dates. And boy, when I went back and looked at Huey and Hugo, I realized there were some other circuits that seemed to go the other way, except in most of the cases that I read, they're distinguishable. They were dates that were different or whatever. They're not the same situation. It seems we've got a Supreme Court decision. Restitution can be given only for the laws caused by the specific conduct that is the basis of the offense. The basis for the offense here was not a scheme. It was five dates. That's it. And we're talking about dates that are beyond the statute of limitation. On top of it would distinguish this case from other cases. Out of the statute of limitation, the government made a mistake in charging. It was not brought to the jury, did not see an indictment with more than the five dates. I don't know how you can read what the Supreme Court said and what we have said to allow you to seek restitution for dates that were not charged. You can't assume the jury found guilt there. It was mentioned during the trial. That's the same thing as charging. So a few points on that, Your Honor. Beginning with Huey and Udo, neither of those cases dealt with crimes that involved as an element of the crime scheme. And so those cases aren't entirely on point, but they are helpful. Here, what's important is the jury did find that Paul engaged in a scheme to defraud. While we're talking about a scheme, first of all, part of this so-called scheme is out of the statute of limitations. Why list before the jury only five dates and nothing outside of the statute of limitations? It's the only thing the jury was confronted with. That's your mistake. So restitution calculations are made by the district court. The MVRA explains that the district court makes these findings by proponents of the evidence. So the jury doesn't have to find. It's supposed to follow what the Supreme Court said, right? That's exactly right, Your Honor. We think we did that here. The jury here found. I don't know how you can think that restitution can be given only for the laws caused by the specific conduct. That is the basis of the offense. The specific conduct that was the basis for the offense are five dates. There were other dates that were vaguely referenced but not charged, nothing before the jury that were outside of the statute of limitations period. Maybe that caused the prosecutor to hedge the bets. But in any event, they were not before the jury. I don't know how you can read Huey and say that, well, you can take into account all the possibilities, even though that was really not the case before the jury. I'll make a few points. The most important of which I think is a Huey predates the MVRA and the changes made in that statute. That statute clarifies that victims get restitution. Victims include those directly harmed by conduct in the course of a criminal scheme. It shows that restitution is given for conduct in the course of the scheme, whether that scheme falls out or whether that conduct falls outside the limitations period or not. And so that being said. Hugo says you can't reach uncharged events. So we're not reaching here uncharged wire fraud counts. It doesn't matter whether the wire fraud counts could have been charged or not, because what we're reaching here is post-conduct as part of the scheme that occurred. The jury was not asked to find scheme or no scheme. That's not the question. That was before the jury. The jury has five dates. The jury was asked to find a scheme, Your Honor, and that scheme is an element of a crime. And so here the elements of the wire fraud are. There's a scheme to defraud. The scheme that the jury thought it was considering included five dates. That's it. Those are executions of the scheme, which is a separate part of the separate element of the wire fraud count. Yeah, I'm glad you're smiling. In fact, because that's I don't think that's a winning response. So there's a scheme. And what's the scheme? Five dates. That's it. I think those are actually supposed to guess about the rest. So the jury finds a scheme and it finds that executions of the scheme that happened on or about those five dates. But the determination of what conduct falls within the scheme is for the district court to make under the MVRA. Section 3664 E explains district court makes fact findings that determine the scope of the scheme and the amount of restitution, which is what happened here. Here the jury found a criminal scheme. Statute says district court judge can find guilt on the basis of something that was never considered by the jury. I don't think so. The judge isn't finding guilt here, Your Honor. The judge is finding whether or not the conduct that Paul engaged in was part of the criminal scheme, which the jury already found guilt. So that's what was the jury instructed on what the scope of the scheme was as far as from this date to that date or or any other limitations. It wasn't. It was given a limited verdict form that only included these five dates. And that's partly because Paul asked the jury not to be given the indictment because Paul believed the indictment had a lot of extra information. He didn't want the jury to see. The answer is no. The jury did not to my college. The answer is no. Correct. Correct. So the jury didn't have those dates before them, partly because of Paul's insistence that jury not be shown the indictment in the jury room. But what matters here is that the jury found that Paul engaged in a scheme to defraud. And the district court then found at the hearing that this was all part of the same criminal scheme, all of that same scheme for which he was charged and convicted. And because of that, the inquiry requires institution for that. So let's suppose all prior to Senator Kennedy had also worked for another senator. And in investigating this, they found that he had been doing this for 25 years. You know, none of that was put before the jury. But that sentencing in the district judge, you know, on the government's request, look at all of that going back 25 years and say restitution because it's all part of the same scheme. It depends on a number of factors. If the government has a charge in the indictment, the indictment, of course, that's the outer limits. But if the indictment charges the outer limits, then as long as the district court or the government has a burden to prove this by proponents of the evidence. So as long as the district court makes a finding by proponents of the evidence that Paul's conduct was part of the same scheme for the entire 25 years, then the government can get restitution for that. And in fact, it's required by the MVRA. And we cite some cases in our brief on page 54, I believe that go back 15 or 17 years. The limitation on restitution is really about the defendant's conduct. The longer and broader the defendant's term of scheme is, the more the MVRA requires that he pay. How do we understand the parameters of the scheme? What tells us what the parameters of the relevant scheme are? So the limits are, the outer limits are in the government's indictment, because he can only be charged restitution for what he has been charged for. And once the indictment limits the beginning and the end of the scheme, then the district court's back finding by proponents of the evidence determined what conduct was within that scheme. And here, how did the indictment describe the scheme? It's beginning in 2003 and ending in 2007. That's not what the jury saw. No, the jury did not see that. The government argued this in closing argument, and there was evidence in the trial about that. The jury was simply asked to find a scheme. The jury was not. The jury was asked about five dates. Don't change the facts. The jury was asked about five dates. That's it. And you want to make, as did the district court, want to make scheme cover anything, whether or not the jury considered it. And what's really kind of astonishing here, it's out of the statute of limitations. We cite to numerous cases in page 54 of our brief. Other courts have found this. This is the Parnell case. I mean, I can run you down most of those, and they're distinguishable. I think what's important here is that the jury finds a criminal scheme, and the NVRA says after that it's for the district court to determine what the restitution is by determining as part of that what conducts fault. I'm not saying the jury found a scheme that didn't. The jury found guilt on five occasions. That's all they were presented. One of the elements of guilt for wire fraud, Your Honor, we may just simply disagree on this, but one of the elements of wire fraud is that there was a criminal scheme. I guess the question is, at least in my mind, is I think you're right that the jury has to find a scheme to convict on wire fraud. So the word scheme is used in the jury instruction. I take it it was here. It was. But that doesn't necessarily tell us that the jury is finding the same scheme that was encompassed by the indictment. So as I understand the theory, it's that the jury has to find some scheme to convict of wire fraud, and that scheme could be a scheme that's confined to the particular incidences of fraud that are put to the jury. So it could be a scheme that envelops five specific incidents. The indictment could encompass 20 incidents because it dates back 15 years behind that. So the scheme that's found by the jury could be more confined than the scheme. The scope of the scheme that's found by the jury could be more confined than the scope of the scheme that's encompassed by the indictment. And I think that just has to be true. But your submission is, that's OK, because as long as the indictment covers the larger scheme, anything within that larger scheme can be included as part of restitution, even if it's larger than the scheme that the jury found in determining that there was wire fraud. Is that your position? That's basically right, Your Honor. Yes. So then your position has to be, it isn't, just to follow on to Judge Edwards' questioning, it isn't that the jury found the scheme that would support the restitution award. It's that the jury found a scheme, that scheme may be a narrower scheme than the one that would support the restitution award, but that doesn't matter. Because as long as the scheme that's in the indictment supports the restitution award, that's all that matters from the government's perspective. That's correct. As long as the district court makes findings under the MVRA that the indictment matches what he finds to be part of the scheme, then that's all that matters. So it would be, the restitution award is supported by a scheme that ranges, or at least can be supported by a scheme that ranges beyond the scope of the scheme that's found by the jury. That's theoretically possible. Of course, we don't know what the jury found, but yes, the indictment limits the outer scope of the scheme, and then the district court makes findings for restitution, which can include conduct in the course of the scheme that maybe the jury didn't consider or think about. And then it seems like there would be, and I think we noticed this in our prior opinion, there could be an apprendee issue about the jury's findings supporting the scope of the scheme that leads to the restitution award. Paul hasn't raised that in his brief, and so I think that's been abandoned and waived, and this court shouldn't consider it. That being said, every court to have considered that issue has found that there is no apprendee issue. Apprendee limits judge-made fact findings that raises the statutory maximum, and restitution has no statutory maximum. It's a variable amount that changes based on the defendant's conduct. And do you understand there to be an argument in this case before us that the jury didn't find the relevant – put aside the apprendee issue just for now. I think that's a gloss on this, but that the jury – although the jury found a scheme, they didn't find the relevant scheme that would support the restitutionary award. I don't see that raised in the defendant's brief, Your Honor. I don't think that's before this court, and so I don't think this court needs to consider that. But I think even if that were before this court, as long as the jury found a scheme here, it's the district court under the MVRA to find, by proponents of the evidence, what conduct fell within that scheme. And if it does, the MVRA requires restitution for that conduct. But the district court didn't find that – the district court didn't purport to find that the scheme found by the jury encompassed all of the conduct dating back before the statute of limits, right? The district court didn't – because the district court didn't think that it had to do that. The court said that all of the conduct was part of the scheme that was charged and convicted, but the court didn't say the jury found necessarily a scheme this long. The district court couldn't know that. Right, because the jury – we don't know exactly the parameters of the scheme that the jury found. We know that they found a scheme. Correct. But we don't know the parameters of that scheme. Correct. Because they didn't have evidence about the full scheme that was alleged in the indictment before it, so we can't know. That's correct, Your Honor. And the jury wasn't asked to do that. That wasn't something that the jury needed to be asked about. And so the jury found five executions of the scheme, but it didn't actually make findings about the length of the scheme. And part of that is because, of course, the indictment wasn't sent back to the jury, showing all the extra evidence that Paul didn't want the jury to know about because it was outside the limitations period. So you say that as long as the scheme described in the indictment, that restitution can be ordered for all acts that fall within the scheme described in the indictment, right? That's correct. Is that from the MVRA text, or what – where does that come from? That essentially comes from Huey and Udo and those other cases that say that the restitution must be for the crime charged and convicted. And so if it hasn't been charged in the indictment, it can't be encompassed within the restitution order. Even though the jury's never seen the indictment? That's correct, Your Honor. As long as he was charged with it and its conduct underlying the crime he was convicted for, Huey allows that. And the MVRA, of course, explains that. It includes restitution for conduct throughout the course of the scheme. Did you say charged and convicted? He has to be convicted for a scheme. So part of the conduct is, was he convicted of a scheme here? It's a scheme-based offense, and that's what matters under the MVRA. But I thought you said in describing where we get this from Hugo and Udo that those cases talk about the scheme that was charged and convicted. I may not be clear about my language, but it has to be the conduct underlying the offense, I should say. That's what the language that Huey uses. And so conduct underlying the offense has to be, of course, charged in the indictment. But once it's charged in the indictment, then the district court can make fact findings to determine what conduct, by prudence of the evidence, he believes falls within that scheme. So could a district court do the following? Could a district court say the scheme alleged in the indictment covers 20 acts? The scheme presented to the jury covers five of those 20 acts. I find that the scheme that was necessarily found by the jury in rendering the conviction was confined to those five acts. So that's what was found beyond a reasonable doubt. But I find by a preponderance of the evidence that the scheme charged covers 20 acts. And I mean, I guess the government could present evidence and sentencing that says that all those acts were proven by a preponderance of the evidence. And so by preponderance, that entire scheme existed. And therefore, I'm ordering restitution as to all the 20 acts. The court could do that, Your Honor. I think the court has to do that under the MVRA, because the MVRA says if you're a victim, you get restitution. And then says victims are people who are harmed by a criminal scheme, by the course of conduct in the criminal scheme. Didn't we say in poll one the government can always ask the district court to craft a verdict that ensures the jury is able to make factual findings sufficient to support a particular amount of restitution? This court said that, and then it said, or if there's no apprendee problem, it can simply have the jury make the appropriate fact findings. The court there. There was no fact finding. I'm sorry, I missed. There was no such fact finding. The court did find here that all of.  The jury didn't make this fact finding. No, right, because the jury didn't know it had more than five events before. But based on this court's language in poll one, the court said either that or assuming no apprendee problem, which this court should assume for this case as well, since it hasn't been raised. The government can ask the court to make these fact findings. And so the government did that. The court did find that all of polls bonuses here are part of the same criminal scheme. And so order restitution for all of them. What would be wrong with the rule that said, look, if you intend to ask for restitution beyond specific acts that the jury find, then in your scheme instruction, you say you must find that there's a scheme from day one to day two. And you just set forth the date. For the jury for the jury. I think what would be wrong with requiring that? I think a couple of things. The first is that Huey says that restitution is a creature of statute. And the statute here, the NBRA says these are findings that are made by a judge by proponents of the evidence. And so a jury doesn't have to actually make the finding about the length of the scheme here. That's a finding for the for the court to make by proponents of the evidence. And so it'd be strange to have a jury make a finding on a reasonable doubt that a judge would have to actually have to make by a lower standard. The second problem is, I think there's a lot of defendants. Well, I think was one of them who doesn't want the jury to think about how long running this scheme was. And so I think defendants have problems with that as well. But I think the biggest problem here is that it would run sort of counter to the language of the NBRA. And just to just to clarify, the statement in our prior opinion. Was that the government can always ask the district court to craft a verdict form that ensures the jury is able to make factual findings sufficient to support a particular amount of restitution. Right. Or assuming no present a problem for the court to resolve factual disputes. I think you might have said jury on the second one, but we said we hypothesized that the court. I apologize. I meant the court. Yes. And so the court, I think, was giving two options based on whether there was an apprentice problem here. Again, there's been no apprentice issue raised. And so the court's findings here are sufficient under this court's decision in poll one to find that the scheme encompassed. I mean, clearly, if there was an apprentice issue, if you're wrong about the apprentice issue, then obviously what happened here can't be sustained because the jury, we'd have to know that the jury found beyond a reasonable doubt that the scheme encompassed the full range of events. I think that's right, Your Honor. Again, there's been no apprentice issue raised here. We don't think apprentice applies to the reasons I've discussed. But there's an apprentice issue. This is a different case entirely. There, of course, isn't one here. And so the question simply is whether, you know, the course of conduct included the harms that the court considered within the scheme. For the purpose of our case, if the government were to prevail on this issue, we wouldn't have to say that the government is right, that there's no apprentice problem. That's correct. We could assume a world in which there isn't an apprentice problem, but leave open whether there in fact is a requirement that the jury make the findings about the parameters of the scheme. In which event, this case, had the apprentice issue been raised and preserved, would come out differently. That's exactly right, Your Honor. That's exactly right. So, trying to make sure I understand the government's position and how you construed the statute. Let's suppose the jury had been instructed that the scheme was in 2004 and 2005. And so that was the instruction that was given to the jury. Maybe it was done inadvertently, but that's the instruction that was given. And so when they returned their guilty verdict, that's the scheme that they found. Is it your position that it doesn't matter? The district court at sentencing could still order restitution beyond 2004 and 2005? I think it is, Your Honor. I think the idea is that the jury found a criminal scheme by a certain standard, which has brought a reasonable doubt. But the district court standard is lower, the proponents of the evidence. And so even if the jury didn't find this, the district court still could. And so as long as the indictment includes that within the indictment, the district court could find under 3664. Even if the jury was instructed? Are you answering the question, my colleague asked? The jury was instructed the scheme that occurred in 2004 and 2005, that's consistent with what the jury had already seen. And you're saying even in that situation, you can go outside of those dates into a period not covered, doesn't meet the statute of limitations, never presented to the jury. And in the instruction before they begin deliberations, they're told it's only 2004 and 2005. That's correct, Your Honor. There are two different answers. Who says that? I mean, what is this argument we're making now based on the based on the text of the M.B.R.A. But the text of the M.B.R.A. If I'm you tell me if I'm reading. So 3663 a and then let's look at a two. Is that the relevant text? That's correct, Your Honor. It says victim means a person directly and proximately harmed as a result of the commission of an offense. For which restitution may be ordered. So what does it mean harmed as a result of the commission of an offense? If the offense was defined. For the purposes of my life's last hypo as a scheme from 2004, 2005. Isn't it a different offense to order restitution for things that happened outside of that time period? I was at the same event. I think what matters here is that there are different standards. And so the jury may have found unreasonable doubts that the offense went from 2004, 2005. But the district court finds by a lower standard that the scheme went longer than that. I think it's a different question for a different back finder, which is the main issue here. So you're trying to liken this to like acquitted conduct or something where, you know, it can still be considered that sentencing. As long as there's some finding. I'm just trying to understand. Stand exactly how you think we should construe this statute and understand the word commission of an offense. I think there's a few points. I think one of the changes the MVRA made after Huey was that usage of, say, an offense. And it was changed to commission of an offense, which courts have said tries to broaden the reach of the statute. And the second thing I'll say is that the MVRA says a victim is any person directly harmed by the criminal conduct in the course of the scheme. And because it's a different inquiry, the jury has to find the crime. But the district court finds restitution for restitution purposes. The district court can make findings that are broader than the jury had to make. I think to me, and I don't have the full statutory language in front of me, but I see it on excerpts quoted at page 51 at least. It speaks in terms of an offense involving as an element a scheme. And then a victim is any person directly harmed by the defendant's criminal conduct in the course of the scheme. So the scheme and a scheme refer to the same scheme. So if the offense involves as an element a scheme, and that only deals with what's in the indictment as opposed to the scheme found by the jury, then I take it it could be the case that if the jury acquits on a wire fraud count, then under your view, the government could still say, well, the offense involves a scheme. And the person directly harmed by the criminal conduct in the course of that scheme is a scheme that we can show by a preponderance of the evidence, even though the jury acquitted on the existence of the scheme beyond a reasonable doubt. That's correct, Your Honor. Of course, none of this happened here. Here he was found guilty on all six counts, and the indictment did list the entire scheme that we seek restitution for. But I think the fact is that if we assume that the scheme that was put before the jury is narrower than the scheme that's in the indictment. Then that breaks down to the same thing as. Ultimately, as the jury finding the existence, the jury declining to find the existence of the scheme that the indictment alleges. I think I think it's partly right. I don't think the scheme before the jury was less than the scheme in the indictment. I think the jury wasn't asked to make findings in the verdict form based on everything that's in the indictment. But the information from the indictment beginning in 2003 was presented to the jury. The jury saw exhibits discussing false actions in 2003 and 2004. The government's closing argument mentioned the seventy five thousand dollars Paul stole, which is the entirety of the amount from 2003 and 2004, including 2007. So the jury here is presented with evidence of the entire scheme. Right, but we don't know what. We don't know the scope of the scheme that the jury, in fact, found because it wasn't required to define the parameters of the scheme in order to convict a fire fraud. That's correct. Yes. No, the verdict form is limited to five events. It's limited to the five executions of the scheme that were charged here. I'm happy to answer more questions, your honors, but there are no more. You're happy. I'll send a brief that if there are no more questions. Thank you very much. Thank you, Mr. Stern. We'll give you two minutes for a rebuttal. Thank you, your honor. I'd like to briefly address three points that the government raised in its argument. First, as to this idea that the failure to object to Mr. Mogul Nikki's rule for a weight violative testimony was somehow strategic by trial counsel and that maybe this was positive because it painted Mr. Poll in a positive light. That's completely contradicted by the declaration that trial counsel submitted in connection with the evidentiary hearing that occurred on remand in this matter. Trial counsel explained in his declaration explicitly that there was no strategic reason for his failure to consider federal rule of evidence for a way to object to this testimony. He simply didn't consider the application of this rule during Mr. Poll's trial. And that's in the record at twenty fourteen to fifteen. He also testified consistently at the evidentiary hearing in this matter when he said that if he had known that rule for a way prohibited this testimony, he would have had it taken out. And I believe that's in the record at page thirty sixty seven. So the second point I'd like to make is that the government mentioned actual prejudice to Mr. Poll. My colleague briefly addressed some of the evidence in the record. The point here, respectfully, is that there was conflicting evidence in the record that the jury had to weigh. The jury had to consider competing testimony and and determine whether Mr. Poll possessed the requisite state of mind. That was the critical issue. And then third, I'd like to address this idea that there was only one evidentiary issue that prejudiced Mr. Poll. There were at least two. And those are not just Mr. Molden, Nicky's will for a weight violation testimony, but the government's use of Mr. Poll's oath of office in its closing argument. That was evidence that was never admitted at trial. It was plainly inadmissible. And it also went directly to this question of Mr. Poll's state of mind. So it should never have been before the jury. And those compounding errors of improper evidence, in our view, infected Mr. Poll's trial and our basis to reverse the district court's denial of Mr. Poll's motion on the basis of ineffective assistance of counsel. And I see that I'm out of time. So I think I thank the court for its attention. Thank you, counsel. Thank you to both counsel. Mr. Stern, you are appointed by the court to represent the appellant in this matter. And the court thanks you for your assistance. Thank you so much, Your Honor.
judges: Srinivasan; Wilkins; Edwards